UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KARI A. DORNBUSCH, | Case No. 09-CV-1734 (PJS/JJG) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

Neut L. Strandemo, STRANDEMO, SHERIDAN & DULAS, P.A., for plaintiff.

Lonnie F. Bryan, UNITED STATES ATTORNEY'S OFFICE, for defendant.

I. INTRODUCTION

Plaintiff Kari A. Dornbusch applied for Social Security disability insurance benefits and supplemental security income in October 2004.[1] Dornbusch contends that she has been disabled since July 15, 2002 and seeks benefits from that date forward. She bases her claim primarily on a diagnosis of multiple sclerosis ("MS"), but the record also contains some evidence of mental impairments related to depression, a personality disorder, or both.

An administrative law judge ("ALJ") found that Dornbusch was not disabled and thus rejected Dornbusch's claim. After exhausting her administrative remedies, Dornbusch brought this action in July 2009, challenging the denial of her claim.

---

[1] Regulations governing claims for Social Security disability insurance benefits are found in 20 C.F.R. part 404. Regulations governing claims for supplemental security income are found in 20 C.F.R. part 416. The two sets of regulations include essentially identical provisions about determining the existence of a disability.

Both Dornbusch and defendant Michael J. Astrue, the Commissioner of the Social Security Administration, moved for summary judgment on the basis of the administrative record ("AR").[2] The Court referred the motions to Magistrate Judge Jeanne J. Graham for a report and recommendation ("R&R"). Judge Graham found that substantial evidence supported the ALJ's finding that Dornbusch was not disabled and, accordingly, Judge Graham recommended that the Court grant summary judgment to Astrue (and, correspondingly, deny summary judgment to Dornbusch). R&R at 25-26 [Docket No. 18].

Dornbusch objects to the R&R. Obj. [Docket No. 20]. The Court has reviewed de novo those portions of the R&R to which Dornbusch objects, as required by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). Although the Court recognizes and appreciates the care with which Judge Graham reviewed both the ALJ's decision and the administrative record, the Court finds that the ALJ failed to properly assess Dornbusch's claim that she is disabled by pain and fatigue caused by her MS. For the reasons that follow, the Court adopts the R&R to the extent that it is consistent with this opinion, denies summary judgment to Astrue, and grants partial summary judgment to Dornbusch as follows: The Court reverses the ALJ's decision and remands this matter to the ALJ for further proceedings consistent with this opinion.

## II. DISCUSSION

### *A. Background*

Judge Graham discussed this case's factual and procedural background carefully and at length in the R&R. R&R at 1-19. The Court adopts the "Background" section of the R&R. To

---

[2]The administrative record was filed as docket number 7. Citations to the administrative record in this opinion take the form "AR [page number]."

the extent that additional facts are relevant to the Court's analysis, those facts are discussed in context below.

## B. Standard of Review and Governing Law

In Social Security cases, an ALJ's findings must be affirmed when they are supported by "substantial evidence appearing on the record as a whole." *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is less than a preponderance of evidence; it is evidence that a reasonable mind would find adequate to support the ALJ's decision. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). In reviewing the ALJ's decision for substantial evidence, a court must "consider evidence that detracts from the [ALJ]'s decision as well as evidence that supports it." *Id.* But a reviewing court may not reverse an ALJ's decision just because the court would have decided the matter differently in the first instance. *Id.*

In deciding in the first instance whether a claimant is disabled for Social Security purposes, an ALJ must follow a five-step process.[3] At step one, the ALJ asks whether the claimant is engaged in substantial gainful activity.[4] If not, the ALJ proceeds to step two and asks whether the claimant has a medically determinable impairment (or combination of impairments) that is "severe" — i.e., that substantially limits the claimant's ability to work.[5] If so, the ALJ proceeds to step three and asks whether the claimant's impairment meets, or is equivalent to, a

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

[5] *Id.* §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

"listed" impairment found in an appendix to the governing regulations.[6] A claimant who has had a listed impairment or the equivalent for a sufficiently long time is, as a matter of law, disabled for Social Security purposes.[7]

If a claimant's medically determinable impairment does not meet or equal a listed impairment, the ALJ proceeds to step four of the analysis. At this step, the ALJ determines the claimant's "residual functional capacity" and then asks whether, given that capacity, the claimant can still do her past relevant work.[8] The claimant generally bears the burden of producing evidence with respect to her residual functional capacity, but the ALJ must assist in developing the claimant's complete medical history.[9]

If the ALJ finds at step four that the claimant, given her residual functional capacity, can still do her past relevant work, then the claimant is not disabled.[10] But if the ALJ finds that the claimant *cannot* do her past relevant work, then the ALJ proceeds to step five. At this step, the ALJ must determine whether the claimant, given her residual functional capacity and her age, education, and experience, can do other work that exists in significant numbers in the national

---

[6]*Id.* §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *id.* pt. 404, subpt P, app. 1.

[7]*Id.* §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

[8]*Id.* §§ 404.1520(a)(4)(iv), 404.1520(e)-(f), 416.920(a)(4)(iv), 416.920(e)-(f).

[9]*Id.* § 404.1545(a)(3) ("[B]efore we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."), § 416.945(a)(3) (same).

[10]*Id.* §§ 404.1520(f), 404.1560(b)(3), 416.920(f), 416.960(b)(3).

economy.[11] The burden is on the Commissioner to provide evidence that demonstrates that such work exists.[12]

## C. Dornbusch's Disability Claim

The ALJ rejected Dornbusch's disability claim at step five of the above-described analysis. Specifically, the ALJ found that: (1) Dornbusch was not engaged in substantial gainful employment (step one), AR 18; (2) Dornbusch suffered a number of severe medically determinable impairments, including MS (step two), AR 19-20; (3) none of Dornbusch's impairments met or was equivalent to a "listed" impairment (step three), AR 20-22; (4) Dornbusch retained the residual functional capacity to do "light" unskilled work, but not her previous job as a cosmetologist (step four), AR 23-28; and (5) Dornbusch was not disabled because she was capable of doing jobs that exist in significant numbers in the national economy, such as office helper, office cleaner, cashier, information clerk, and security monitor. AR 29.

Dornbusch disputes the ALJ's conclusions with respect to her residual functional capacity. Specifically, Dornbusch agrees with the ALJ that she can no longer do her previous job, but she further argues that the ALJ erred in finding that she retained the residual functional capacity to do light unskilled work. Obj. at 5 (arguing that based on the opinions of Dornbusch's

---

[11]*Id.* §§404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(1), 416.920(a)(4)(v), 416.920(g), 416.960(c)(1).

[12]*Id.* §§ 404.1560(c)(2) ("In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors. We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work."), 416.960(c)(2) (same).

treating physicians, the ALJ should have found that she "could not perform substantial gainful activity as defined in the Social Security Act").

Dornbusch makes two related, but conceptually distinct, arguments about why the Court should reject the R&R and find that substantial evidence does not support the ALJ's decision. First, Dornbusch contends that the ALJ erred in failing to give controlling weight to the opinions of her two treating physicians, both of whom said, with varying degrees of certainty, that Dornbusch was unable to work. Obj. at 5. Second, Dornbusch argues that the opinion about Dornbusch's residual functional capacity offered at the hearing by Dr. Andrew Steiner, a consulting physician, did not constitute substantial evidence to support the ALJ's decision. *Id.*

On the first issue: The Court agrees with Judge Graham that substantial evidence supported the ALJ's determination not to give controlling weight to the opinions of Dornbusch's treating physicians. *See* R&R at 21-24. According to Social Security Ruling 96-2p, a treating physician's opinion is entitled to controlling weight only if the opinion is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "'not inconsistent' with the other substantial evidence in the case record." Soc. Sec. Ruling 96-2p (July 2, 1996), *available at* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-02-di-01.html.

Dornbusch's primary-care physician, Dr. Daniel Larkin, opined in November 2007 that Dornbusch "would have difficulty holding a 9-5 job" because of "the unpredictable nature of multiple sclerosis and its exacerbations," and Larkin specifically identified MS-related pain as being Dornbusch's primary disabling symptom. AR 602. Dornbusch's neurologist, Dr. Randall F. Schapiro, opined at about the same time that Dornbusch's MS "has left her with significant fatigue and, at times, pain associated with it," and that "on the basis of her significant fatigue, a

decision would have to be made" about whether she qualified for Social Security disability benefits. AR 601.

The medical records, as discussed at length in the R&R, are somewhat equivocal with respect to the severity of Dornbusch's MS symptoms. *See* R&R at 2-18, 21-25. The ALJ was therefore not required to give controlling weight to either Larkin's or Schapiro's opinions about Dornbusch's ability to work. At the same time, however, the ALJ was not required to entirely *reject* Larkin's and Schapiro's opinions. Indeed, according to the "Policy Interpretation" section of Social Security Ruling 96-2p, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.*

On the second issue: The ALJ rejected Larkin's and Schapiro's opinions about Dornbusch's medical condition, as well as Dornbusch's testimony about her symptoms and a statement from Dornbusch's sister consistent with that testimony, in favor of Steiner's opinion. AR 24-25. In response to the ALJ's request for an opinion "based on the review of the objective record," Steiner testified that Dornbusch would have a "light" residual functional capacity "based strictly on the physical diagnoses." AR 652-53.

The ALJ is, of course, entitled to consider the opinion of a consulting physician such as Steiner.[13] But, as a general rule, the opinion of a non-treating, non-examining physician such as Steiner is entitled to less weight than the opinion of a treating or examining physician.[14] Moreover, the Eighth Circuit has cautioned against overreliance on the opinion of a consulting

---

[13] *See* 20 C.F.R. §§ 404.1527, 416.927.

[14] *Id.* §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2).

physician that conflicts with the opinion of a treating physician. *Lauer v. Apfel*, for instance, said that "[g]enerally, even if a consulting physician examines a claimant once, his or her opinion is not considered substantial evidence, especially if, as here, the treating physician contradicts the consulting physician's opinion." 245 F.3d 700, 705 (8th Cir. 2001). Similarly, *Shontos v. Barnhart* said that "[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." 328 F.3d 418, 427 (8th Cir. 2003).

In this case, Steiner's opinion does not provide substantial evidence for the ALJ's finding that Dornbusch retained the residual functional capacity to perform light work. The extent of a claimant's residual functional capacity is a medical question. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Steiner's medical opinion about Dornbusch's residual functional capacity was based solely on "objective" medical evidence. AR 652-53. But Dornbusch's allegedly disabling symptoms — pain and fatigue — were subjective, not objective. Although the ALJ was entitled to ask Steiner for an opinion based only on objective evidence, the ALJ was not entitled to reject Dornbusch's claim of disability on the sole basis that Dornbusch's subjective symptoms were not sufficiently supported by objective evidence. Yet that is just what the ALJ did.

Objective evidence of subjective symptoms such as pain must, of course, be considered in assessing the extent of a claimant's disability.[15] But an ALJ is forbidden to "reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical

---

[15] 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

evidence does not substantiate [her] statements."[16] Social Security Ruling 96-7p emphatically warns ALJs that they may not discount reports of subjective symptoms solely because the symptoms are not shown by objective medical evidence:

> When there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms, the adjudicator must always attempt to obtain any available objective medical evidence concerning the intensity and persistence of the pain or other symptoms, and, when such evidence is obtained, must consider it in evaluating the individual's statements. *However, allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence.* A report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility. However, the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.

Soc. Sec. Ruling 96-7p (July 2, 1996), *available at* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html (emphasis in original).

In determining whether a claimant's reports of subjective symptoms are credible, an ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." *Id.* (Policy Interpretation — Credibility). As the Eighth Circuit held in *Polaski v. Heckler,* in considering a disability claim based on subjective symptoms, an ALJ must:

> "give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record,

---

[16]*Id.* §§ 404.1529(c)(2); *see also* 416.929(c)(2) (same, but with an additional reference to a child's ability to function independently).

> and observations by third parties and treating and examining physicians relating to such matters as:
>
>> 1. the claimant's daily activities;
>>
>> 2. the duration, frequency and intensity of the pain;
>>
>> 3. precipitating and aggravating factors;
>>
>> 4. dosage, effectiveness and side effects of medication; [and]
>>
>> 5. functional restrictions."

739 F.2d 1320, 1322 (8th Cir. 1984) (quoting a settlement agreement reached by the Department of Justice and describing the quoted language as "a correct restatement of our case law, to be followed in all administrative and judicial proceedings within the Eighth Circuit").

The ALJ's opinion cites *Polaski*, AR 23, and correctly identifies the factors that must be considered under *Polaski* and Social Security Ruling 96-7p, AR 23-24, but it is clear from the non-boilerplate portion of her opinion that the ALJ in fact disbelieved the evidence about Dornbusch's subjective symptoms solely because her symptoms were not supported by objective medical evidence. Specifically, after describing Dornbusch's testimony about her symptoms and their effect on Dornbusch's daily life, and after noting that Dornbusch's sister provided a statement supporting that testimony, the ALJ abruptly concluded: "[T]he undersigned gives greater weight to the objective medical evidence in the record and the testimony of the impartial medical expert [Steiner]. Accordingly, the undersigned is not persuaded to reduce the residual functional capacity beyond what was set forth earlier in this decision." AR 24. Because Steiner's testimony was itself based solely on his review of the objective medical evidence, the ALJ, in effect, rejected Dornbusch's testimony solely — and therefore erroneously — because

the objective medical evidence did not substantiate Dornbusch's subjective symptoms. *See also* AR 26 ("The claimant's allegations of disability due to MS are not supported by the objective medical evidence in the record."); AR 27 ("The above residual functional capacity and Dr. Steiner's testimony is well-supported by the objective medical evidence in the record.").

The ALJ's rejection of Dornbusch's testimony about her symptoms is all the more striking given the ALJ's acceptance, for purposes of assessing Dornbusch's possible mental impairments, of a report prepared at the ALJ's direction by a psychologist, Donald E. Wiger. In that report, Wiger said that psychological testing "did not suggest an exaggeration of symptoms" by Dornbusch. AR 583. Inexplicably, the ALJ does not mention this finding anywhere in her decision.

The ALJ sent Dornbusch to Wiger in May 2007 for an evaluation of whether her symptoms might be caused by a "somatoform disorder or other mental impairment." AR 15. Wiger found no evidence of a somatoform disorder or a personality disorder; instead, he found that Dornbusch suffered "an adjustment disorder chronic [*sic*], secondary to the stressors of MS and changes in functioning." AR 582. Wiger found that Dornbusch "can carry out mental tasks with reasonable persistence and pace," that she "responds appropriately to other people," and that she "is able to handle the emotional stressors of the workplace." AR 583.

A different mental-health professional, Dr. Karayusuf, had examined Dornbusch in 2005 and opined that Dornbusch had a personality disorder and depression and could not function effectively in the workplace. AR 417. The ALJ rejected Karayusuf's opinion about Dornbusch's mental ability to work in favor of Wiger's, saying: "The undersigned gives greater weight to Dr. Wiger's opinion because he conducted both a clinical interview and psychological testing,

-11-

giving him a more broad basis for his opinion." AR 21. The ALJ does not explain, or even discuss, why Wiger's opinion about Dornbusch's mental abilities was entitled to significant weight, but Wiger's opinion that Dornbusch did not appear to be exaggerating her symptoms was apparently given no weight.

Although notes from Dornbusch's office visits to both Larkin and Schapiro generally did not show significant deficits on exams performed during the visits, her medical history overall is entirely consistent with her testimony that she suffered significant fatigue and pain in between her office visits. Dornbusch went to the emergency room for pain in February 2002, AR 224; October 2002, AR 198; February 2003, AR 266; and February 2007, AR 574. She went to urgent care for pain and numbness in December 2003, AR 278-79. From 2002 through 2004, she underwent numerous imaging studies directed at identifying the source of her symptoms.

Further, Dornbusch has consistently been prescribed medication for pain, headaches, and sleep difficulties.[17] Yet the ALJ inaccurately described Dornbusch's history of medication use, saying:

> The undersigned has considered the claimant's use of medications. Dr. Steiner testified that the claimant's MS symptoms have been treated with various immunosuppressant agents and prednisone bursts. She has been prescribed Ibuprofen for tension type headaches.

---

[17]*See, e.g.*, AR 347 (Feb. 6, 2003 office-visit notes stating that "[s]he has been given both Darvocet as well as Percocet in the past for pain control"); AR 343 (Apr. 4, 2004 office-visit notes describing use of Imitrex and Relpax for migraine headaches); AR 340 (April 27, 2004 office-visit notes describing use of prednisone and Darvocet for pain and paresthesias); AR 329 (Oct. 29, 2004 office-visit notes describing use of Topamax for headaches and Darvocet as needed for pain); AR 326 (Jan. 13, 2005 office-visit notes describing history of using Topamax, Vicodin, Darvocet, and Ambien).

AR 28. In fact, Dornbusch's MS symptoms were treated both with steroids such as prednisone and with narcotics such as Darvocet and Percocet. And Dornbusch did not just take ibuprofen for tension headaches; rather, she took various prescription medications for migraine headaches.[18]

Dornbusch's medical records also show that she sought treatment after falling. *See* AR 541 (May 18, 2006 office-visit notes stating that "[s]he presents today with a history of a fall on an outstretched hand"). And Dornbusch testified that she has had "a lot of falls" because of her MS. AR 624.

Dornbusch also told her doctors about falls. For instance, Schapiro's notes for an office visit on September 19, 2005 say, "[f]alling occ[asionally] from balance issues." AR 531. When the ALJ asked Steiner about this particular note, Steiner dismissed it, saying: "Now that, of course, is by report and then we go and look at [Schapiro's] actual examination findings and we just don't find much to account for balance difficulties." AR 655. Steiner similarly discounted evidence that Dornbusch reported, and was treated for, pain, saying:

> I think that's what's been reported fairly consistently is pain and pain in the legs, back, neck. Yes, I think that has been reported and so when I saw these kinds of things and I'd go and look and see if the doctors have actually done examination demonstrating, for instance, the coordination problems and the like and I couldn't find those things but he did say that, yeah, she reported those things.

AR 656.

---

[18]*See, e.g.*, AR 343 (Apr. 4, 2004 office-visit notes describing use of Imitrex and Relpax for migraine headaches); AR 329 (Oct. 29, 2004 office-visit notes describing use of Topamax for headaches); AR 326 (Jan. 13, 2005 office-visit notes describing history of using Topamax).

In sum, as noted earlier, Steiner disregarded evidence about Dornbusch's subjective complaints because he did not see objective medical evidence of those complaints. The ALJ then discounted Dornbusch's subjective complaints on the basis of Steiner's opinion. In doing so, the ALJ did not "give *full* consideration to all of the evidence presented relating to [Dornbusch's] subjective complaints," as *Polaski* requires. 739 F.2d at 1322 (internal quotation marks omitted). Instead, the ALJ discounted Dornbusch's subjective complaints based solely on the objective medical evidence, which *Polaski* forbids.

For these reasons, the ALJ's conclusion that Dornbusch is not disabled is not supported by substantial evidence. Dornbusch has complained that she is disabled by the pain and fatigue that she experiences because of her MS. The ALJ cannot dismiss Dornbusch's complaints of *subjective* symptoms solely on the ground that they are not supported by *objective* medical evidence. Instead, the ALJ must give full consideration to all of the evidence presented relating to Dornbusch's subjective symptoms, and the ALJ must carefully and clearly analyze each of the factors identified by *Polaski* and Social Security Ruling 96-7p. This case is remanded to the ALJ so that she can perform this analysis

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, the Court SUSTAINS Dornbusch's objection [Docket No. 20] and ADOPTS IN PART Judge Graham's Report and Recommendation [Docket No. 18] to the extent that it is consistent with this order. Accordingly, IT IS HEREBY ORDERED THAT:

1. The motion for summary judgment of defendant Michael J. Astrue, Commissioner of the Social Security Administration [Docket No. 10] is DENIED.

2. The motion for summary judgment of plaintiff Kari A. Dornbusch [Docket No. 8] is GRANTED IN PART and DENIED IN PART as follows:

    a. The decision of Administrative Law Judge Mary M. Kunz dated October 23, 2007 is REVERSED.

    b. This matter is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

    c. The motion is DENIED in all other respects.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 27, 2010

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge